### 32143. HARRIS *v.* THE STATE.

GARDNER, J. The defendant was tried on a charge of murder for the killing of his wife and was convicted of voluntary manslaughter. The only contention here is that the evidence does not support the verdict for voluntary manslaughter, and that the trial court committed reversible error in submitting voluntary manslaughter to the jury.

Briefly, the facts are that the defendant and his wife were returning to their home from a village several miles away. The car had one seat. The defendant was driving, and his wife, Arlene Harris, was sitting beside him. On the other side of the car seat, Otis Matthews was sitting and his wife, Ethel, was sitting in her husband's lap. Before leaving the village and prior to that occasion, the evidence reveals that there had been considerable trouble between the deceased and his wife. They had a difficulty just before leaving the village. Before they reached home, the defendant remarked to his wife to remove her hand from around his neck,—that he knew she intended to cut him. Thereupon the deceased removed her hand and procured a pistol upon which she was sitting. The defendant stopped the car and they apparently began to scuffle for the possession of the pistol. The deceased had a knife either in her hand or on her person. When this happened, Otis Matthews and his wife jumped out of the car and fled from the car. It was night. After Matthews and his wife had gotten some little distance from the car they heard a pistol fire. They walked on to their home and did not return to the car. Later on in the night, about three hours after the shooting, the defendant went to the home of Otis Matthews. He was in his car, the same one the four were in when the trouble began. He stated to Matthews that he was leaving—that he was scared—that he was a good mind to give up, he didn't know what to do, and he did not know what the deceased's family would think and that they might hurt him. He

did go from Wilcox County to Pelham, Georgia, and surrendered to the officers there. The trouble was reported to the officers of Wilcox County. The deputy sheriff went to the house where the deceased and the defendant lived. The door was locked, but the key was in it on the outside. The deputy sheriff found the deceased in bed with a pistol wound in her breast near the heart. He also discovered an open switch-blade knife on her bosom, beneath her clothing. No pistol was found. In addition to the pistol wound, the deputy sheriff testified that there was blood on the right side of the mouth of the deceased as if she might have been bleeding from the mouth. Her face was skinned also. Reverting for a moment to the village, the defendant and the deceased had trouble at the filling station there just a few minutes before they left for home. A witness testified that he heard the defendant tell the deceased to close the knife and put it in her pocket and that if she did not do so, he was going to kill her. Thereupon, the defendant picked up a piece of brick and put it in his pocket and they (meaning the defendant and the deceased), left. We have gone somewhat into detail regarding the evidence, for the purpose of illustrating the fact that the evidence is sufficient to sustain the verdict of voluntary manslaughter. It has been many times held that if there is a doubt, however slight, as to whether an offense was that of murder or voluntary manslaughter, it is the duty of the court to submit the law of both murder and manslaughter and let the jury determine the grade of the offense of the homicide. See, in this connection, *Wilcox* v. *State*, 77 *Ga. App.* 786 (50 S. E. 2d, 29), and citations.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*

DECIDED NOVEMBER 6, 1948.

*Henry B. Sutton, Wright & Reddick*, for plaintiff in error.
*Harvey L. Jay, Solicitor-General*, contra.